**EXHIBIT**

Notice of Removal Exhibit A

| | |
|---|---|
| DISTRICT COURT, PITKIN COUNTY, STATE OF COLORADO<br>506 E. Main Street, Suite E<br>Aspen, Colorado 81611<br>(970) 925-7635 | DATE FILED: May 10, 2022 1:20 PM<br>FILING ID: 6D56D3D8C159A<br>CASE NUMBER: 2022CV30039 |
| **Plaintiff**: THE ASPEN MOUNTAIN RESIDENCES CONDO ASSOCIATION, INC., a Colorado nonprofit corporation.<br><br>vs.<br><br>**Defendant**: ROBERT H. WEISMAN, an individual. | ▲ COURT USE ONLY ▲<br>Case Number: |
| *Attorneys for Plaintiff:*<br>ORTEN CAVANAGH HOLMES & HUNT, LLC<br>Jonah G. Hunt, No. 34379<br>Marcus T. Wile, No. 49471<br>Address:   1445 Market Street, Suite 350<br>            Denver, CO 80202<br>Phone Number:   (720) 221-9780<br>Fax Number:    (720) 221-9781<br>Email:    jhunt@ochhoalaw.com<br>         mwile@ochhoalaw.com | Div.: |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff The Aspen Mountain Residences Condo Association, Inc. f/k/a G.A. Resort Condominium Association, Inc. ("Plaintiff" or "Association"), by and through counsel, hereby alleges and avers in this Complaint and Jury Demand against the Defendant Robert H. Weisman ("Mr. Weisman"), as follows:

**Jurisdiction and Venue**

1. Jurisdiction is proper pursuant to C.R.S. § 13-1-124(1), and venue is proper in Pitkin County, Colorado pursuant to C.R.C.P. 98(c)(1) and (5).

**Parties**

2. The Association is a Colorado nonprofit corporation with its principal place of business located at 415 East Dean Street, Aspen, CO 81611.

3. Upon information and belief, Mr. Weisman is an individual residing at 3915 Valentia Way, Naples, FL 34119.

## Applicable Law

4. Each and every director and officer of a nonprofit corporation in the State of Colorado owes duties of loyalty and care to the corporation. The duty of loyalty requires directors and officers to act for the Association's benefit only, and not for their own personal benefit or the benefit of others. This duty requires directors and officers to exercise their powers in the Association's best interest, as opposed to their own personal interest.

5. "A breach of the duty of undivided loyalty occurs when [the agent] obtains a personal advantage in dealing with a [beneficiary] or … creates circumstances that adversely affect the [beneficiary's] interest." *Smith v. Mehaffy*, 30 P.3d 727, 733 (Colo. App. 2000).

6. Each director must also discharge their duties (as set forth in the Association's governing documents and applicable statutes) with a duty of care. C.R.S. § 7-128-401 of the Colorado Revised Nonprofit Corporation Act sets forth the general standard of conduct for directors and officers, stating, in pertinent part, that each director shall discharge their duties as a director or as a member of a committee:

   (a) In good faith;
   (b) With the care an ordinary prudent person in a like position would exercise under similar circumstances; and
   (c) In a manner the director or officer reasonably believes to be in the best interest of the nonprofit corporation.

7. Pursuant to C.R.S. § 7-128-402, no director or officer shall benefit from any limitation of liability to the nonprofit corporation for monetary damages for any breach of the director's duty of loyalty to the nonprofit corporation or to its members, acts or omissions not in good faith or that involve intentional misconduct or a knowing violation of law, acts specified in section 7-128-501(2), or any transaction from which the director directly or indirectly derived an improper personal benefit.

## General Allegations

8. Mr. Weisman is a member of the Association, former director and Board President of the Association, and former chair of the Association's legal committee.

9. Mr. Weisman is an attorney who is licensed in the State of New York, Registration No. 3825577.

10. In 2019, the Association's Board, under Mr. Weisman's presidency, began taking steps to terminate various contractual agreements with its managing agent, including the

Condominium Association Management Agreement ("Management Agreement") and the Hyatt Vacation Club Resort Agreement ("Club Agreement"; collectively the "Agreements").

11. The Management Agreement would terminate upon the approval of 2/3 of the Board and the approval of 2/3 of the membership. Litigation was not required to terminate the Management Agreement.

12. The Club Agreement was subject to termination by the Association pursuant to the terms of C.R.S. § 38-33.3-305, requiring a simple majority vote of the Board. Again, litigation was not required to terminate the Club Agreement.

13. Rather than utilizing the contractual and statutory mechanisms to terminate the Agreements, Mr. Weisman recommended aggressively pursuing litigation to accomplish termination, including seeking damages against the declarant, its successors, and affiliates.

14. Mr. Weisman sourced litigation counsel and led the negotiation and execution of a fee agreement with those firms.

15. On April 9, 2019, Mr. Weisman prepared a memorandum to the other members of the Association's legal committee outlining the proposed terms of engagement, representing it to be a 28% contingent fee upon winning at trial or settlement.

16. Such memorandum did not include any discussion providing that a "success" fee of $7.75M would be due if the membership terminated the Management Agreement and the Board terminated the Club Agreement independent of legal representation. Rather, the Board was led to believe that the $7.75M fee represented a negotiated cap on the maximum payment to counsel under the 28% contingency arrangement.

17. On May 3, 2019, Mr. Weisman presented an engagement agreement he had already executed on April 19, 2019, which, in addition to the 28% contingent fee, outlines the $7.75M "success" fee which becomes due if counsel,

> [O]btain[s] termination or "Material Restructuring" of the [Agreements] [] by any means after this agreement is entered into, including by the owners by vote during this Engagement, settlement, and/or court ordered recission or judgment.

18. On May 3, 2019, the Association filed suit against various declarant entities. The case was removed to federal court and ultimately dismissed on July 30, 2020 without the case even making it into discovery.

19. A subsequent appeal was also unsuccessful.

20. During the pendency of the litigation, Mr. Weisman relentlessly pursued and made repeated requests of the Association for payment for rendering of his services. Each

request for remuneration from Mr. Weisman was rejected by the Board of Directors, including the last one Mr. Weisman proposed in January 2021.

21. Thereafter, in April 2021, with full knowledge that the Board did not support his being paid for his services, Mr. Weisman began negotiating with litigation counsel to obtain 20% of the success fee, purportedly to be triggered by termination the Agreements.

22. Mr. Weisman's efforts in getting paid shifted at this time because he knew many of the current Board members did not have knowledge of the terms of the fee agreement or its success fee.

23. Thereafter, Mr. Weisman diligently lobbied both the membership and Board of Directors to terminate the Agreements, which occurred in June and August of 2021. The Board of Directors and membership were specifically informed by Mr. Weisman of the benefits of termination.

24. However, Mr. Weisman repeatedly and intentionally omitted any mention that voting to terminate the Agreements may trigger the $7.75M success fee.

25. Mr. Weisman further intentionally omitted disclosure that he was actively negotiating a 20% fee share of the $7.75 success fee ($1,550,000) for his benefit should the Agreements be terminated.

26. Ultimately, the fee agreement with litigation counsel was amended on October 25, 2021 to have Mr. Weisman take 20% of the success fee. Mr. Weisman was the Association's Board President at the time.

27. Moreover, despite earlier intimations that he would resign from the Board, Mr. Weisman never did so and rather let his term expire the following month in November 2021. This was after he had aggressively campaigned for the termination of the Agreements and after the fee agreement was amended to have him take 20% of the success fee, or $1,550,000.

28. Ultimately, the Association's membership and new Board of Directors, without disclosure or knowledge of the success fee, voted to terminate the Agreements thereby, according to Mr. Weisman, triggering a financial windfall to himself personally.

29. Mr. Weisman breached his fiduciary duties by failing to initiate a discussion with the Board or legal committee regarding renegotiation of the success fee prior to the Board vote on the Club Agreement. If the Club Agreement was not terminated, litigation counsel would have no colorable claim to the success fee.

30. Upon information and belief, Mr. Weisman did not do so because he stood to obtain a financial windfall if the Club Agreement was terminated. Stated differently, he sought

to impose, by nondisclosure and deceit, a $7.75M obligation on his fellow owners in order to bestow upon himself a $1,550,000 benefit.

31. Mr. Weisman, during his presidency on the Board of Directors, intentionally took action to ensure himself considerable financial benefit at the expense of the Association and its membership.

32. Mr. Weisman utilized his position of authority within the Association to actively mislead, misrepresent, and withhold information crucial to ensuring an informed, fair decision-making process of both the members of the Association and the new members of the Board of Directors.

33. Because his misconduct and selfish acts were intentional, willful, and wanton, Mr. Weisman is not entitled to any contractual or statutory indemnity from the Association.

### First Claim for Relief
### (Breach of Fiduciary Duty)

34. The Association incorporates by reference all previous allegations as if set forth herein.

35. Mr. Weisman, in connection with his prior position as Board member and President, owed statutory and common law fiduciary duties to the Association, which included the duties of care and loyalty.

36. As set forth above, Mr. Weisman breached his fiduciary duties to the Association by acting in an intentional, willful, wanton, arbitrary, and capricious manner.

37. Specifically, in addition to the above, Mr. Weisman repeatedly withheld and misrepresented facts to both the Board and membership, and placed his own personal interests above that of the community.

38. The Association has been damaged by Mr. Weisman's breaches in an amount to be determined at trial.

### Second Claim for Relief
### (Breach of Duty of Good Faith)

39. The Association incorporates by reference all previous allegations as if set forth herein.

40. Pursuant to C.R.S. § 7-128-401, each nonprofit director or officer must discharge his duties in good faith.

5

41. Moreover, pursuant to C.R.S. § 38-33.3-303, Mr. Weisman, as a former Board member, was subject to and bound by the terms of Colorado's Common Interest Ownership Act ("CCIOA").

42. C.R.S. § 38-33.3-113 provides that "every contract or duty governed by this article imposes an obligation of good faith in its performance or enforcement."

43. As alleged in detail above, by and through his repeated nondisclosures and misrepresentations, Mr. Weisman intentionally, willfully, and wantonly has failed to use good faith and to deal fairly with the Association, and has acted in an arbitrary and capricious manner, elevating his personal interests over that of the Association.

44. As a result of Mr. Weisman's intentional and improper acts, the Association has been damaged in an amount to be proven at trial.

## Request for Relief

WHEREFORE, Plaintiff The Aspen Mountain Residences Condo Association, Inc. requests the following relief from this Honorable Court as follows:

(a) That judgment enters in the Association's favor on its first and second claims for relief against Mr. Weisman in an amount to be determined at trial; and

(b) For all actual, consequential, special, punitive, exemplary, and/or nominal damages due to the Association, along with an award of its attorney fees and costs pursuant to C.R.S. § 38-33.3-123(1) and -302((1)(k)(I), pre- and post-judgment interest as permitted by law, and for such other and further relief as the Court deems proper.

**THE ASSOCIATION DEMANDS A JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 10th day of May, 2022.

ORTEN CAVANAGH HOLMES & HUNT, LLC

By: /s/ *Jonah Hunt*
Jonah G. Hunt, No. 34379
Marcus T. Wile, No. 49471

*Attorneys for Plaintiff The Aspen Mountain Residences Condo Association, Inc.*

Plaintiff's Address:
415 East Dean Street
Aspen, CO 81611

| | |
|---|---|
| DISTRICT COURT, PITKIN COUNTY, STATE OF COLORADO<br>506 E. Main Street, Suite E<br>Aspen, Colorado 81611<br>(970) 925-7635 | DATE FILED: May 10, 2022 1:20 PM<br>FILING ID: 6D56D3D8C159A<br>CASE NUMBER: 2022CV30039 |
| **Plaintiff**: THE ASPEN MOUNTAIN RESIDENCES CONDO ASSOCIATION, INC., a Colorado nonprofit corporation.<br><br>vs.<br><br>**Defendant**: ROBERT H. WEISMAN, an individual. | ▲ COURT USE ONLY ▲ |
| | Case Number:<br><br>Div.: |
| *Attorneys for Plaintiff:*<br>ORTEN CAVANAGH HOLMES & HUNT, LLC<br>Jonah G. Hunt, No. 34379<br>Marcus T. Wile, No. 49471<br>Address:        1445 Market Street, Suite 350<br>                    Denver, CO 80202<br>Phone Number:   (720) 221-9780<br>Fax Number:     (720) 221-9781<br>Email:          jhunt@ochhoalaw.com<br>                mwile@ochhoalaw.com | |
| **SUMMONS** | |

**THE PEOPLE OF THE STATE OF COLORADO**

**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the clerk of this Court an answer or other responsive pleading to the attached Complaint. If service of the Summons and Complaint was made upon you within the State of Colorado, you are required to file your answer or other responsive pleading within 21 days after such service upon you. If service of the Summons and Complaint was made upon you outside of the State of Colorado, or if you are served by publication, you are required to file your answer or other responsive pleading within 35 days after such service upon you.

If you fail to file your answer or other responsive pleading to the Complaint in writing within the applicable time-period, judgment by default may be entered against you by the Court for the relief demanded in the Complaint without further notice.

2

The following documents are also served herewith: Complaint and Civil Case Cover Sheet.

Dated this 10th day of May, 2022.

                ORTEN CAVANAGH HOLMES & HUNT, LLC

                *Original signature on file.*

                By: /s/ *Jonah G. Hunt*
                Jonah G. Hunt, No. 34379
                Marcus T. Wile, No. 49471

This Summons is issued pursuant to C.R.C.P. 4, as amended. A copy of the Complaint must be served with this Summons.

2