IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-01457-NYW

ASPEN MOUNTAIN RESIDENCE CONDO ASSOCIATION, INC.,

  Plaintiff,

v.

ROBERT H. WEISMAN,

  Defendant.

---

**ORDER ON MOTION TO STAY**

---

This matter comes before the Court on Defendant's Motion to Stay Pending Arbitration (the "Motion" or "Motion to Stay") filed on June 30, 2022. [Doc. 22]. The Court concludes that oral argument will not materially assist in the resolution of this matter. Having considered the Motion and associated briefing, the applicable case law, and the entire docket, the Motion to Stay is respectfully **GRANTED**.

**BACKGROUND**

Plaintiff, the Aspen Mountain Residences Condo Association, Inc. ("Plaintiff" or the "Association"), initiated this civil action against Defendant Robert H. Weisman ("Defendant" or "Mr. Weisman") on May 10, 2022 in the District Court for Pitkin County, Colorado. *See* [Doc. 5]. Defendant removed the action to federal court on June 9, 2022. [Doc. 1].

In its Complaint, the Association alleges that Mr. Weisman, an attorney, is a member of the Association, a former director and Board President of the Association, and a former chair of

the Association's legal committee. [Doc. 5 at ¶¶ 8-9].[1] In 2019, the Board, "under Mr. Weisman's presidency," began taking steps to terminate various contractual agreements between the Board and its managing agent. [*Id.* at ¶ 10]. Although litigation was not required to terminate the agreements and there were contractual and statutory mechanisms in place to terminate the agreements, Mr. Weisman "recommended aggressively pursuing litigation to accomplish termination" of the agreements. [*Id.* at ¶¶ 11-13]. Mr. Weisman "sourced litigation counsel and led the negotiation and execution of a fee agreement" with litigation counsel. [*Id.* at ¶ 14].

On April 9, 2019, Mr. Weisman presented proposed terms of an engagement agreement with litigation counsel to the Association's legal committee and represented to the committee that a 28% contingency fee would be due to counsel upon prevailing at trial or in settlement; his presentation did not discuss, however, that a "success fee" of $7,750,000 would be due if the agreements were terminated "independent of legal representation." [*Id.* at ¶¶ 15-16]. According to the Association, "the Board was led to believe that the [success] fee represented a negotiated cap on the maximum payment to counsel under the 28% contingency arrangement." [*Id.* at ¶ 16]. Then, on May 3, 2019, Mr. Weisman presented an engagement agreement to the Board, which he had already executed, outlining both the contingency fee and the success fee. [*Id.* at ¶ 17]. The Association then filed a lawsuit "against various declarant entities," which was ultimately dismissed on July 30, 2020. [*Id.* at ¶ 18].[2]

Throughout the former litigation, Mr. Weisman repeatedly requested that the Association pay him for rendering legal services, but each request was rejected by the Board. [*Id.* at ¶ 20]. In

---

[1] The Court draws these facts from the Complaint [Doc. 5] and presumes they are true for purposes of the instant Motion.

[2] The Association does not identify the "various declarant" defendants in that lawsuit. *See* [Doc. 5 at ¶ 18].

2

April 2021, Mr. Weisman began negotiating with litigation counsel to obtain 20% of the success fee, which would be triggered by the termination of the agreements. [*Id.* at ¶ 21]. Thereafter, Mr. Weisman "diligently lobbied" the Board to terminate the agreements, but omitted that termination may trigger payment of the success fee or that he was negotiating a 20% fee-sharing arrangement. [*Id.* at ¶¶ 23-24]. And in October of 2021, while Mr. Weisman served as the Board's president, the fee agreement with litigation counsel was amended to permit Mr. Weisman to receive 20% of the success fee. [*Id.* at ¶ 26].

The agreements were eventually terminated by the Association's membership and Board "without disclosure or knowledge of the success fee," which the Association asserts resulted in a "financial windfall" to Mr. Weisman. [*Id.* at ¶ 28]. The Association argues that Mr. Weisman "intentionally took action to ensure himself considerable financial benefit at the expense of the Association and its membership." [*Id.* at ¶ 31]. The Association raises two claims against Mr. Weisman in this case: (1) breach of fiduciary duty; and (2) breach of the duty of good faith. [*Id.* at 5-6].

Mr. Weisman filed the instant Motion on June 30, 2022. [Doc. 22]. Mr. Weisman concedes that he "became party to an arbitration provision contained in the Association's Retainer Agreement with counsel." [*Id.* at 3]. But Mr. Weisman requests that the Court stay this litigation pending the resolution of a parallel arbitration proceeding, [*id.* at 2], which was brought by the Association against a number of law firms and lawyers, including Mr. Weisman. *See* [Doc. 23]. Mr. Weisman argues that a stay is required on two bases: first, that the Association's claims fall within the scope of an arbitration agreement, and second, on the grounds that the arbitration proceeding will have a preclusive effect on the claims in this action. [Doc. 22 at 4, 6]. In response, the Association argues that the Parties in this case have not entered into any agreement to arbitrate,

3

as the agreement relied upon by Mr. Weisman was entered into by Mr. Weisman as an attorney of the Association, not in his individual capacity. [Doc. 26 at 3-5].[3] In the alternative, the Association argues that the claims in this case are outside of the scope of the arbitration agreement. [*Id.* at 6-8]. As for Mr. Weisman's arguments concerning preclusion, the Association maintains that its claims against Mr. Weisman in this case "may be proven irrespective of the outcome in arbitration as the legal obligations owed to [the] Association, as its agent and fiduciary, are independent and distinct from [Mr. Weisman's] duties to the Association as its attorney." [*Id.* at 5]. According to the Association, "when two claims are distinct and unrelated, resolution of an arbitrable claim cannot have preclusive effect on a nonarbitrable claim and one does not predominate over the other." [*Id.*].

## LEGAL STANDARD

A court has "broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "A federal court may dismiss or stay federal proceedings when a parallel or duplicative proceeding is pending in another forum," or when "parallel or duplicative proceedings [are] pending in arbitration." *Turner v. Efinancial, LLC*, No. 18-cv-00292-CMA-GPG, 2018 WL 11182739, at *2 (D. Colo. Sept. 27, 2018). In determining whether a stay is appropriate, the court's inquiry is focused on whether the issues in the parallel proceedings are substantially similar. *Vail Servs. Grp., LLC v. Dines*, No. 17-cv-02428-CMA-KLM, 2018 WL 3069525, at *2 (D. Colo. June 21, 2018). The fact that a party to the litigation did not agree to arbitrate does not preclude a court from staying the litigation, *see Gouger v. Citibank NA*, No. CV 19-02434-KHV, 2020 WL

---

[3] The Parties do not appear to dispute that Mr. Weisman entered into an arbitration agreement in his capacity as the Association's attorney, and thus, the claims against him in that capacity are subject to arbitration. *See* [Doc. 22 at 5-6; Doc. 26 at 4].

4

1320723, at *1 (D. Kan. Mar. 20, 2020), particularly where the issues involved in the arbitration are "inextricably linked" to the issues raised in the litigation. *Warren Miller Ent., Inc. V. Level 1 Prods., Inc.*, No. 09-cv-02254-CMA-BNB, 2009 WL 3416231, at *5 (D. Colo. Oct. 20, 2009); *see also Vail Servs. Grp.*, 2018 WL 3069525, at *2 (rejecting argument that arbitration was not parallel to the litigation because the defendant in the litigation did not agree to arbitration); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 n. 23 (1983) ("[I]t may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration.").

## ANALYSIS

Although the Parties each assert arguments concerning whether there exists an agreement to arbitrate between the Parties in this case, *see* [Doc. 22 at 4-5; Doc. 26 at 3-6], the Court concludes that it can rule on the Motion to Stay without resolving this substantive issue. *See Gouger*, 2020 WL 1320723, at *2. Accordingly, the Court limits its analysis to whether a stay is appropriate, under its inherent authority to manage its docket, due to the pending parallel proceeding. *Cf. Butcher v. Teamsters Loc. 955*, No. 18-2424-JAR-KGG, 2019 WL 1115260, at *3 (D. Kan. Mar. 11, 2019) (where there was no dispute that there was no arbitration agreement between the parties, reviewing motion to stay in light of the court's inherent power to issue a stay).

"[T]he mere fact that piecemeal litigation [may] result[] from the combination of arbitrable and nonarbitrable issues is not reason enough to stay [an] entire case." *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 785 (10th Cir. 1998). However, "[g]ranting a stay is appropriate when the arbitrator's findings on issues and claims will have a preclusive effect on nonarbitrable claims." *Gouger*, 2020 WL 1320723, at *2. "If there will be such a preclusive effect, especially if the arbitrable claims predominate over the nonarbitrable claims, then the district court should consider whether to stay the federal-court litigation of the nonarbitrable claims

5

pending the arbitration outcome on the arbitrable claims." *Riley Mfg. Co.*, 157 F.3d at 785. The decision to stay proceedings should be "based upon considerations of judicial efficiency," *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1518 (10th Cir. 1995), including whether a stay would (1) promote judicial economy; (2) avoid possible inconsistent results, or (3) result in undue hardship or prejudice to the plaintiff. *Belnap v. IASIS Healthcare Corp.*, No. 2:14-cv-00086-DN, 2017 WL 4351472, at *3 (D. Utah Sept. 29, 2017).

As set forth above, this case involves allegations that Mr. Weisman, as a member and president of the Board, breached his fiduciary duty and duty of good faith by misrepresenting facts to the Board and membership and by placing his interests above that of the community. [Doc. 5 at ¶¶ 36-37, 43]. Similarly, the arbitration proceeding accuses Mr. Weisman of, *inter alia*, a breach of fiduciary duty and a breach of the implied covenant of good faith and fair dealing in his capacity as an attorney for the Association. [Doc. 23 at 16, 18]. In so doing, the Association makes several allegations as to Mr. Weisman that are substantially similar or identical to the allegations in the instant case: (1) upon securing a renegotiated fee-sharing agreement, Mr. Weisman lobbied the Board to terminate the agreements; (2) Mr. Weisman failed to properly disclose the success fee to the Board members or that termination could trigger the success fee; and (3) Mr. Weisman "worked in a deceptive manner" to ensure himself a "financial windfall." [*Id.* at ¶¶ 71-75, 81].

While the Association suggests that the two proceedings are "distinct and unrelated," it does not expound on this argument. *See* [Doc. 26 at 5]. Upon review of the Complaint in this action and the arbitration complaint, the Court concludes that the parallel proceedings are based largely on the same facts and allegations, and it is thus "difficult to imagine that arbitration of the claims against [Mr. Weisman] would *not* have some preclusive effect on the claims" in this matter. *Belnap*, 2017 WL 4351472, at *3. More specifically, in issuing a ruling in the arbitration

proceeding, the arbitrator will be required to determine whether, for example, Mr. Weisman intentionally withheld information from the Board or membership in the course of negotiating a fee-splitting agreement with litigation counsel or lobbying for the termination of the agreements—a material fact predominating in this litigation. Thus, "[a]t minimum, the result of one proceeding may preclude [the Parties] from re-litigating certain ultimate facts in the other proceeding." *DiTucci v. Ashby*, No. 2:19-cv-277-TC-JCB, 2021 WL 4217332, at *6 (D. Utah Sept. 16, 2021). For this reason, staying this litigation pending the resolution of the arbitration would "promote judicial economy because the outcome of the arbitration will likely be applicable to the claims against" Mr. Weisman in this action. *Belnap*, 2017 WL 4351472, at *3; *see also Evergreen Holdings, Inc. v. Sequoia Glob., Inc.*, No. CIV-08-776-F, 2008 WL 4723008, at *3 (W.D. Okla. Oct. 23, 2008) ("The court concludes that a stay will also promote judicial economy as a resolution of the arbitration may resolve portions or all of this action.").

Moreover, staying this case would avoid the potential risk of inconsistent results based on the same factual predicate. "[T]o have two adjudicative bodies simultaneously address claims involving the same facts and allegations is a significant waste of resources and creates the risk that the arbitration and the litigation might produce inconsistent results." *Belnap*, 2017 WL 4351472, at *3; *see also DiTucci*, 2021 WL 4217332, at *7 (simultaneous proceedings involving the same evidence, the same factual issues, and similar questions of law runs the risk of inconsistent results). Although the Association argues that its claims in this litigation "may be proven irrespective of the outcome in arbitration as the legal obligations owed to the Association, as its agent and fiduciary, are independent and distinct from [Mr. Weisman's] duties to the Association as its attorney," [Doc. 26 at 5], the Court is respectfully unpersuaded by this argument. While Mr. Weisman may owe separate duties to the Association as an officer versus as an attorney, the Court

notes that the claims asserting a breach of fiduciary duty against Mr. Weisman—either as officer or as an attorney—will require resolution of substantially the same issues. *See Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993) (to succeed on a claim for breach of fiduciary duty, the plaintiff must demonstrate that (1) the defendant acted as a fiduciary to the plaintiff; (2) the defendant breached the fiduciary duty; (3) the plaintiff was damaged; and (4) causation); *Moye White LLP v. Beren*, 320 P.3d 373, 377 (Colo. App. 2013) ("A fiduciary relationship exists as a matter of law between an attorney and his or her client."); *Smith v. Mehaffy*, 30 P.3d 727, 733 (Colo. App. 2000) ("A breach of the [attorney's] duty of undivided loyalty occurs when an attorney obtains a personal advantage in dealing with a client, or when the attorney creates circumstances that adversely affect the client's interests."). Moreover, the relevant inquiry here is not whether Plaintiff's claims in the instant action *can* be resolved outside of the arbitration, but whether the parallel proceedings might result in inconsistent results and whether a stay of the litigation may avoid that inconsistency. *See Belnap*, 2017 WL 4351472, at *3.

In addition, although not addressed by the Parties, this Court finds that a stay will also avoid any issues of incongruent discovery between the two actions. Rule 17 of the JAMS Comprehensive Arbitration Rules and Procedures, as compared to Rule 26, 30, 33, 34 and 36 of the Federal Rules of Civil Procedure, have different presumptive scopes of discovery, and staying this action will simply prevent discovery disputes that may arise from different applicable rules and standards.

And finally, the Association does not argue that it will be prejudiced by a stay of this litigation. *See generally* [Doc. 26]. "Arguably, [it] stands to benefit from the process because the resolution of those claims in arbitration would likely aid in streamlining the remaining litigation of the overlapping claims." *Belnap*, 2017 WL 4351472, at *3. Based on these factors, the Court

8

concludes that a stay of this litigation would promote judicial efficiency and economy.

For the reasons set forth herein, the Motion to Stay is **GRANTED**. The case is **STAYED** pending the resolution of the related arbitration. It is hereby **ORDERED** that on or before **December 1, 2022**, and <u>every 90 days thereafter</u>, the Parties **SHALL FILE** a joint Status Report informing the Court of the status of the related arbitration. In addition, upon the resolution of the arbitration, the Parties **SHALL FILE** a joint Status Report informing the Court of the conclusion of the arbitration and the Parties' respective positions as to the appropriate next steps in this case.

## CONCLUSION

Therefore, **IT IS ORDERED** that:

(1)   Defendant's Motion to Stay Pending Arbitration [Doc. 22] is **GRANTED**;

(2)   This case is **STAYED** pending further order of the Court;

(3)   The Scheduling Conference set for September 28, 2022 is **VACATED**, to be re-set if appropriate;

(4)   On or before **December 1, 2022**, and <u>every 90 days thereafter</u>, the Parties **SHALL FILE** a joint Status Report informing the Court of the status of the related arbitration; and

(5)   Upon the resolution of the arbitration, the Parties **SHALL FILE** a joint Status Report informing the Court of the conclusion of the arbitration and the Parties' respective positions as to the appropriate next steps in this case.

DATED: September 8, 2022

BY THE COURT:

_____
Nina Y. Wang
United States District Judge